**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| JOHN W. ROGERS | CIVIL ACTION |
| VERSUS | 16-615-SDD-EWD |
| STONETRUST COMMERCIAL INSURANCE COMPANY | |

**RULING**

This matter is before the Court on the *Motion for Partial Summary Judgment*[1] by Plaintiff, John W. Rogers ("Plaintiff or Rogers"). Defendant, Stonetrust Commercial Insurance Company ("Stonetrust or Defendant") has filed an *Opposition*[2] to this motion, to which Rogers filed a *Reply*.[3] For the reasons which follow, the Court finds that the Plaintiff's motion should be DENIED.

**I.    FACTUAL BACKGROUND**

Plaintiff filed this lawsuit alleging, *inter alia*, Stonetrust's breach of contract for failure to pay wages after his termination for good cause.[4] The current *Motion* specifically addresses Rogers' claim for breach of contract. In his complaint, Rogers alleges that he was employed by Stonetrust as the Senior Vice President of Sales and Marketing from August 2010 to May 14, 2016.[5] On January 5, 2015, Rogers and Stonetrust entered into an employment agreement which was in effect at the time of Rogers' termination.[6] The agreement contained mutual obligations on behalf of both parties concerning Rogers'

---

[1] Rec. Doc. No. 21.
[2] Rec. Doc. No. 23.
[3] Rec. Doc. No. 24.
[4] Rec. Doc. No. 1.
[5] Rec. Doc. No. 1, p. 2, ¶ 5.
[6] Rec. Doc. No. 1, p. 2, ¶¶ 6 and 9.
42759

employment.[7] At issue here are the terms under Sections 3 and 9 of the agreement comprised of Rogers' duties and termination.

Rogers alleges that, on February 15, 2016, he and others were informed by Stonetrust's president and CEO, Timothy Dietrich ("Dietrich"), that the existing hierarchal management model was being replaced by a concept called Holacracy.[8]

Holacracy has been defined as "a method of decentralized management and organizational governance developed by HolacracyOne, in which authority and decision–making are distributed throughout a holarchy of self-organizing teams rather than being vested in a management hierarchy."[9]

> The building blocks of Holocracy's organizational structure are roles. Holacracy distinguishes between roles and the people who fill them, as one individual can hold multiple roles at any given time. A role is not a job description; its definition follows a clear format including a name, a purpose, optional 'domains' to control, and accountabilities, which are ongoing activities to perform. Roles are defined by each circle -or team- via a collective governance process, and are updated regularly in order to adapt to the ever-evolving needs of the organization.
>
> Holacracy structures the various roles in an organization in a system of self-organizing (but not self-directed) circles. Circles are organized hierarchically, and each circle is assigned a clear purpose and accountabilities by its broader circle. However, each circle has the authority to self-organize internally to best achieve its goals. Circle conduct their own governance meetings, assign members to fill roles, and take responsibility for carrying out work within their domain of authority. Circles are connected by two roles known as "lead link" and "rep link," which sit in the meetings in both their circle and the broader circle to ensure alignment with the broader organization's mission strategy.
>
> Each circle uses a defined governance process to create and regularly update its own roles and policies. Holacracy specifies a structured process known as "integrative decision making" for proposing changes in

---

[7] Rec. Doc. No. 1, p. 3, ¶ 10.
[8] Rec. Doc. No. 1, p. 5, ¶ 18.
[9] https://en.wikipedia.org/wiki/Holacracy citing Rudd, Olivia (4/24/09) *Business Intelligence Success Factors: Tools for Aligning Your Business in the Global Economy.* John Wiley & Sons.

42759

governance and amending or objecting to proposals. This is not a consensus-based system, not even a consent-based system, but one that supposedly integrates relevant input from all parties and ensures that the proposed changes and objections to those changes are anchored in the roles' needs (and through them, the organization's needs), rather than individual preferences or ego.

Holacracy specifies processes for aligning teams around operational needs, and requires that each member of a circle fulfill certain duties in order to work efficiently and effectively together. In contrast to the governance process, which is collective and integrative, each member filling a role has a lot of autonomy and authority to make decisions on how best to achieve his or her goals. Some have described the authority paradigm in Holacracy as completely opposite to the one of the traditional management hierarchy; instead of needing permission to act or innovate, Holacracy gives blanket authority to take any action needed to perform the work of the roles, unless it is restricted via policies in governance or it involves spending some assets of the organization (money, intellectual property, etc.).[10]

Plaintiff alleges that the adoption of Holacracy fundamentally changed his position and authority in the company.[11] Prior to the adoption of Holacracy, Rogers reported directly to CEO Dietrich and managed five marketing staff members.[12] Plaintiff's authority included administering salaries, setting performance goals, evaluating and directing activities, as well as recommending termination as to the marketing staff.[13] Rogers alleges that, after the implementation of Holacracy, he had none of these duties.[14]

Initially, Rogers was supposed to fill the role of "lead link" of the marketing circle.[15] As lead link of the marketing circle, Rogers also belonged to the "anchor circle," or "general circle," defined as the broadest circle in the organization.[16] "But on the day following Holacracy's formal adoption, February 16, 2016, Rogers lost his position and

---

[10] Rec. Doc. No. 21-1, pp. 11-12. Citing Rec. Doc. No. 21-12 Holacracy Constitution.
[11] Rec. Doc. No. 21-1, pp. 14 and 15.
[12] Rec. Doc. No. 21-1, p. 15.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*

42759

authority as lead link of the marketing circle, because the marketing circle was absorbed by the underwriting circle."[17] Instead, Rogers was assigned to the roles of "lead marketeer" and marketing trainer within the underwriting circle.[18] Consequently, instead of reporting directly to CEO Dietrich, Rogers now reported to Michael Dileo ("Dileo"), the lead link of the underwriting circle, who was previously his equal.[19]

After the events of February 16, 2016, Rogers hand delivered a resignation letter to Dietrich on March 9, 2016 in accordance with the provisions of Section 9(e)(i) of his employment agreement.[20] The letter notified Stonetrust of Plaintiff's intention to avail himself of the provisions of the employment agreement defined as an employee termination for good cause for a material diminution in employee's (Rogers') authority, duties, or responsibilities.[21] According to Section 9(e), Stonetrust is obligated to pay Rogers his monthly salary for a twelve month period following the effective date of such termination.[22] Additionally, the employment agreement provides for the reimbursement of COBRA continuing health coverage premiums in the event of an employee termination for good cause.[23] Stonetrust responded to Plaintiff's letter by written correspondence dated April 5, 2016 rejecting Rogers' assertion of section 9(e)(i) of the employment agreement, stating that his responsibilities and authority remained the same as before.[24] Rogers' final day at Stonetrust was May 2, 2016.[25]

---

[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] Rec. Doc. No. 21-1, p. 16.
[21] *Id;* Rec. Doc. No. 21-14.
[22] Rec. Doc. No. 21-3, p. 5.
[23] *Id.*
[24] Rec. Doc. No. 21-15.
[25] Rec. Doc. No. 21-1, p. 19.
42759

Rogers seeks summary judgment regarding Stonetrust's breach of contract for failure to pay the monthly salary payments and any COBRA reimbursements following his termination for good cause.[26] Stonetrust maintains the position that Rogers did not suffer any diminution in his authority, duties, or responsibilities.[27] Stonetrust also alleges that there are material issues of fact as to when Rogers received actual notice of this diminution and whether he timely complied with the applicable notice provisions under the employment agreement.[28]

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[29] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[30] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[31] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[32] However, the

---

[26] *Id.*
[27] Rec. Doc. No. 23, p. 2.
[28] *Id.* at p. 3.
[29] Fed. R. Civ. P. 56(a).
[30] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[31] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).
[32] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
42759

non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[33]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[34] All reasonable factual inferences are drawn in favor of the nonmoving party.[35] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[36] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[37]

### B. The Terms of the Employment Agreement

The dispute between the parties is whether the change in the management scheme at Stonetrust resulted in a material diminution in Rogers' authority, duties, or responsibilities justifying his invocation of the provision pertaining to an employee termination for good cause. Section 9 of the employment agreement entitled "Termination" allows either party to end the term of employment under certain conditions, and states in pertinent part:

---

[33] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[34] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).
[35] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[36] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[37] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
42759

(a) Employee's employment hereunder shall be terminated upon the occurrence of any of the following:

****

(v) Employee Termination for Good Cause (as defined herein); or

****

(e) For purposes of this Agreement, "Employee Termination for Good Cause" shall mean Employee's termination of or resignation from Employment for any one or more of the following reasons:

(i) a material diminution in Employee's authority, duties, or responsibilities;[38]

****

Rogers alleges that, after the implementation of Holacracy, his authority, duties, and responsibilities were materially diminished. As a result, Rogers chose to avail himself of the foregoing termination provision and argues that he is entitled to a year of monthly salary payments and reimbursement for continuing health coverage premiums according to section 9(f). Section 9(f) of the employment agreement states in pertinent part:

(f) In the event that Employee's employment is terminated at any time by a Company Termination Without Cause or an Employee Termination for Good Cause, for a twelve month period following the effective date of such termination, the Company shall pay monthly (as severance, termination pay, separation pay, contract payout, compensation, or liquidated damages) the monthly Salary that would have otherwise been payable to the Employee during such period.

****

In addition, in the event that Employee's employment is terminated at any time by a Company Termination Without Cause or an Employee Termination for Good Cause, the Company will pay or reimburse Employee the actual cost of COBRA continuing health coverage premiums, to the extent COBRA is applicable and Employee elects COBRA continuing health coverage.

****

The Company will pay or reimburse COBRA continuing health coverage premiums for the same period of time in which Employee receives continuation of Salary under this Paragraph…[39]

Rogers provided Stonetrust with notice of his intent to avail himself of section

---

[38] Rec. Doc. No. 21-3, p. 4.
[39] *Id.* at p. 5.
42759

9(e)(i) of the employment agreement in written correspondence dated March 9, 2016.[40] Rogers alleges that he hand delivered the letter to Dietrich a month after the adoption of Holacracy, effectively resigning "personally and in writing through Deitrich in several meetings in March and April 2016…"[41] Rogers' final day at Stonetrust was May 2, 2016.[42]

Stonetrust argues that the provisions of Section 3 of the employment contract elevate the "level of facts that Rogers must establish to prove that any changes made to his authority, duties, or responsibilities…" were in fact "material."[43] Section 3 of the employment agreement entitled "Duties" states in pertinent part:

> Duties. Employee shall be employed by the Company as an executive and shall endeavor in good faith to competently perform such duties as inherent in Employee's employment or any designated job position or as specified by the Company and shall also perform and discharge such other employment duties and responsibilities as the Board of Directors or the Chief Executive Officer of the Company shall from time to time reasonably determine, not inconsistent with the Employee's position as an executive with the Company…[44]

Stonetrust argues that, under Section 3 of the agreement, it was entitled "to alter and/or amend Rogers' duties and responsibilities as a company executive."[45]

### C. The Meaning of Material Diminution in Employee's Authority, Duties, or Responsibilities

Rogers argues that, "[p]rior to the inception and adoption by Stonetrust of the scheme of corporate governance styled 'Holacracy,' Stonetrust embodied a hierarchal structure, where people reported to other people who reported to still other people."[46]

---

[40] Rec. Doc. No. 21-14.
[41] Rec. Doc. No. 21-1, pp. 16-17.
[42] Rec. Doc. No. 21-1, p. 19.
[43] *Id.* at p. 6.
[44] Rec. Doc. No. 21-3, p. 1.
[45] Rec. Doc. No. 23, p. 5.
[46] Rec. Doc. No. 21-1, p. 13.
42759

"[P]rior to the inception of Holacracy, … Rogers was personally 'responsible for all activities related to conceptualizing and implementing market strategy and achieving marketing targets and managing complex books of business to maximize profitability and growth.'"[47] In support of these contentions, Rogers relies on the deposition testimony of Stonetrust Human Resources Director Mary Dixon, Stonetrust Senior Vice President of Underwriting Michael Dileo, Stonetrust CEO Timothy Dietrich, and his own testimony. Additionally, Rogers relies on his sworn declaration and the declaration of marketing representative Evin Beck. Finally, Rogers emphasizes the fact that once the marketing circle was absorbed by the underwriting circle and he lost his position as lead link, it was his belief that his very identity as an executive had changed. Based upon this evidence and the principles stated in the Holacracy Constitution, Rogers contends that his ability to supervise subordinates and represent a significant segment of the company had been eliminated.

In opposition, Stonetrust argues that Rogers has failed to submit any "significantly probative evidence of any substantive change" that the introduction of Holacracy had on his authority, duties or responsibilities.[48] Stonetrust argues that the principle evidence relied upon by Rogers is his own declaration. Defendant contends that its evidence through CEO Dietrich is "more substantive and better-informed evidence demonstrating that Rogers did not suffer any diminution of his authority, duties, or responsibilities."[49] Stonetrust argues that Dietrich "has the deepest and most substantive understanding of how he intended for Holacracy to be introduced into Stonetrust and how the transition

---

[47] *Id.* citing to Rec. Doc. No. 21-7, pp. 5-6.
[48] Rec. Doc. No. 23, p. 3.
[49] Rec. Doc. No. 23, p. 4.
42759

that management model with the company was to be accomplished – and at what pace."[50]

In further support of its argument, Stonetrust asserts that Rogers' resignation was premature because at that time, "the degree to which [Holacracy] could be implemented and applied to Stonetrust's business was very uncertain."[51] As such, Stonetrust avers that Rogers' authority, duties, or responsibilities had only changed "in the most superficial and semantic way."[52] Finally, as stated above, Stonetrust contends that Section 3 of the employment agreement allowed Stonetrust to alter and amend Rogers' duties which raises the burden of proof required to show a change that is "material" in nature - a burden that Stonetrust argues Rogers has not met.[53]

After reviewing the arguments and evidence submitted by both parties, the Court finds that there are genuine issues of material fact as to whether Rogers suffered a material diminution in his authority, duties, or responsibilities. Both parties rely on essentially the same evidence in support of their respective arguments.

It is clear from the record that Rogers had a firm understanding of his authority and responsibilities prior to the adoption of Holacracy. However, the only evidence presented concerning Rogers' position after Holacracy is that his title as Senior Vice President of Sales and Marketing changed to his new roles as lead marketeer and marketing trainer. Rogers gives no explanation as to what authority, duties, or responsibilities he retained or had in these new positions.

At best, the evidence presented reflects that Rogers' subjective belief that after

---

[50] Rec. Doc. No. 23, p. 4.
[51] *Id.* at p. 5.
[52] *Id.*
[53] *Id.* at p. 6.
42759

Holacracy he no longer has the managerial authority he once had. On the other hand, the Defendant argues that Rogers' duties did not change after Holacracy. The Court finds that this is a disputed issue of fact which requires a credibility determination which is inappropriate on a summary judgment motion. This duty is exclusively reserved for the jury. Accordingly, Plaintiff's *Motion for Partial Summary Judgment* is DENIED.

### D. Notice Provisions under the Employment Agreement

Stonetrust also argues that there is a material issues of fact regarding whether Rogers complied with the notice provisions of Section 9(e) of the employment agreement which states in pertinent part:

> provided, however, that Employee may not terminate or separate employment for purposes of Employee Termination for Good Cause unless (i) within 60 days after the date on which Employee obtains actual knowledge of the condition or event giving rise to Employee Termination for Good Cause, Employee gives notice to the Company that Employee does not wish to remain in the employ of the Company as a result of such condition or event, (ii) the Company does not cure such condition or event within 30 days after receiving the notice described in the preceding clause (i), and (iii) Employee terminates employment within 180 days after the date on which Employee obtains actual knowledge of the existence of such condition or event. Any failure by Employee to terminate employment within such 180 day period after the initial existence of any condition or event giving rise to Employee Termination for Good Cause shall constitute waiver by Employee of the Employee's right to claim an Employee Termination for Good Cause as a result of such condition or event.[54]

Specifically, Stonetrust argues that it is disputed when Rogers gained "actual knowledge" of the event giving rise to an employee termination for good cause. Defendant argues that Rogers received knowledge of the implementation of Holacracy as early as September 29, 2015, "when Dietrich sent an e-mail to all managers … announcing that

---
[54] Rec. Doc. No. 21-3, p. 5.

42759

fact and providing each of them with a book titled Holacracy, which explained the management model."[55] Stonetrust claims that the implementation of Holacracy was also discussed at monthly management meetings that Rogers was in attendance thereafter. Stonetrust concludes that Rogers' 60 day notice requirement had expired long before his March 9, 2016 resignation.

Rogers contends that he obtained actual knowledge of the event when Holacracy was officially adopted by Stonetrust on February 15, 2016.

The Court finds that there is a material issue of fact as to when Rogers gained "actual knowledge" of the event giving rise to his termination for good cause. Since there are material issues of fact as to Rogers' status after the adoption of Holacracy, the court cannot decide when the condition or event giving rise to Rogers' termination occurred. Therefore, the Court will defer this issue to trial.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's *Motion for Partial Summary Judgment*[56] is DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>February 2, 2018.</u>

*Shelly D. Dick*
_____
**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[55] Rec. Doc. No. 23, p. 7.
[56] Rec. Doc. No. 21.
42759